UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JESSICA BROOKE RUSSELL,               )
individually and on behalf of others  )
similarly situated,                   )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )     No. 3:18-CV-463-PLR-HBG
                                      )
GRUBB & ASSOCIATES, INC.              )
 and JOSEPH GRUBB,                    )
                                      )
          Defendants.                 )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court,

Standing Order 13-02, and the referral Order [Doc. 147] of the District Judge.

Now before the Court is Plaintiff's Motion for Conditional Certification of Collective

Action [Doc. 143], Plaintiff's Motion for Equitable Tolling [Doc. 145], and Defendants' Motion

for Leave to File Document Under Seal [Doc. 151]. The parties appeared before the Court on May

13, 2019 for a motion hearing. Attorney Douglas Hammill[1] appeared on behalf of Plaintiff, while

Attorneys Steven David Lipsey, Jr. and Jennifer Dobbins appeared on behalf of Defendants.

Accordingly, for the reasons more fully explained below, the Court **RECOMMENDS** that

Plaintiffs' Motion for Conditional Certification [**Doc. 143**], Plaintiff's Motion for Equitable

Tolling [**Doc. 145**], and Defendants' Motion for Leave to File Document Under Seal [**Doc. 151**]

be **GRANTED**.

---

[1] Attorney Hammill subsequently filed a Notice of Withdrawal [Doc. 165] on June 12, 2019, noting that Plaintiff continued to be represented by H. Eric Burnette, Michael A. Wagner, and Frank P. Pinchak.

## I.    BACKGROUND

Plaintiff originally filed a Consent to Proceed as a plaintiff in another Fair Labor Standards Act of 1938 ("FLSA") case within this district, *Merrie Smith v. JRC Ventures Inc., et al.*, No. 1:16-cv-499-CHS [Doc. 47], and was subsequently joined as a plaintiff on February 1, 2018 [Doc. 54]. Defendants Grubb & Associates, Inc. ("Grubb & Associates") and Joseph Grubb ("Grubb") were named as additional defendants in the amended complaint filed by Plaintiff and Merrie Smith ("Smith"), as Plaintiff and Smith claimed that Defendants, along with the other defendants in the case, had jointly committed violations of FLSA overtime compensation laws.  [*Id.*].

Plaintiff and Smith filed their initial motion for conditional certification on March 27, 2018 [Doc. 65], as well as a motion for equitable tolling on March 28, 2018 [Doc. 67].  Magistrate Judge Steger denied the Motion for Conditional Certification [Doc. 65], finding that the motion for conditional class certification was premature, and ordered the parties to enter into limited discovery to address whether Defendants were "joint employers" of Plaintiff and Smith [Doc. 101]. However, Magistrate Judge Steger granted Plaintiff and Smith's Motion for Equitable Tolling [Doc. 67], stating that "[t]he statute of limitations for putative Plaintiffs' FLSA claims shall be tolled: (a) from April 10, 2018, to a date thirty days (30) after this Court rules upon Plaintiffs' refiled motion for conditional certification of a collective action; or, alternatively, until (b) the Court enters an Order notifying counsel for the parties that such tolling is ending."  [Doc. 101].

On October 8, 2018, Plaintiff filed a Motion to Sever [Doc. 108] her FLSA claims against Defendants from the causes of action asserted by Smith.  Magistrate Judge Steger granted Plaintiff's Motion to Sever [Doc. 108], and severed Plaintiff's claims against Defendants from Smith's claims [Doc. 124].  Plaintiff's case was then transferred and docketed as *Jessica Brooke Russell v. Grubb & Associates, Inc. and Joseph Grubb*, No. 3:18-cv-463-PLR-HBG.   Under

2

Magistrate Judge Steger's Order, the Clerk's Office replicated all docket entries from the previous case, No. 1:16-cv-499, into the present case.

Plaintiff filed an Amended Complaint [Doc. 128] against Defendants on November 13, 2019. The Amended Complaint states that Plaintiff was previously employed as a companionship worker from September of 2015 through December of 2015 by Defendant Grubb & Associates, of which Defendant Joseph Grubb was the chief corporate officer. [*Id.* at ¶¶ 7, 10]. As a companionship worker, Plaintiff performed several duties for Defendants' elderly clients, including, for example, meal preparation, washing dishes, homemaking services, hygiene services, and home management services. [*Id.* at ¶ 11].

Plaintiff alleges that Defendants failed and refused to pay companionship workers overtime compensation. [*Id.* at ¶ 9]. The Complaint asserts that Plaintiff frequently worked in excess of forty hours in a workweek, but that she was never paid overtime compensation. [*Id.* at ¶ 12]. The Complaint continues that despite Plaintiff complaining twice to her managers about not being paid overtime, two separate Grubb & Associates managers stated that they were not legally required to pay Plaintiff overtime. [*Id.* at ¶ 13]. In addition, the Complaint alleges that Defendants refused to pay Plaintiff compensable driving time between clients, as management instructed Plaintiff that driving time between daily assignments did not qualify as time worked. [*Id.* at ¶ 14].

In summary, the Complaint asserts that Defendants were aware of the U.S. Department of Labor's revision to 29 C.F.R. § 552.109(a), the Home Care Final Rule, requiring third-party providers of companionship services to pay employees overtime compensation in accordance with the FLSA. [*Id.* at ¶ 15]. In the Complaint, Plaintiff contends that the new regulation became effective on January 1, 2015, and by September of 2015, Defendants were aware that a legal challenge to the validity of 29 C.F.R. § 552.109(a) had failed. [*Id.* at ¶¶ 16–17]. Further, the

Complaint asserts that Defendants continued to refuse to pay overtime compensation to companionship employees even after August of 2015. [*Id.* at ¶ 18]. Therefore, Plaintiff asserts that Defendants' continued refusal to pay overtime compensation constitutes willful violations of the FLSA, in violation of 29 C.F.R. § 552.109(a). [*Id.*]. In the Complaint, Plaintiff also alleges that Defendants' policy of refusing to pay travel time between separate work assignment locations is a willful violation of § 11(c) of the FLSA. [*Id.* at ¶ 19].

## II.    POSITIONS OF THE PARTIES

Plaintiff moves [Doc. 143] for an order conditionally certifying this case as a collective action. In addition, Plaintiff requests an implementing procedure, whereby prospective opt-in plaintiffs will be notified of Plaintiff's FLSA claims and be given an opportunity to join the collective action. Specifically, Plaintiff states that the collective action will consist of companionship employees employed by Defendants from January 1, 2015 through December 31, 2017. Plaintiff asserts that there are common questions of law or fact to all companionship employees, and that Plaintiff is similarly situated to the other companionship employees who worked over forty hours in a workweek, but were not paid 150% of the regular rate of pay for time worked over forty hours. Plaintiff maintains that the other companionship employees provided the same general duties and services, as well as regularly worked in excess of forty hours per week. Additionally, Plaintiff claims that she is similarly situated to other companionship employees who were not paid for travel time between client visits during a workday. Plaintiff contends that district courts often conditionally certify similar cases.

Plaintiff claims that she presented sufficient proof that other putative opt-in plaintiffs are willing to join the lawsuit, as eight potential opt-in plaintiffs have already filed consents with the Court [Docs. 135–142], as well as contending that there is evidence of a widespread plan of

refusing to pay applicable overtime pay to companionship employees. Plaintiff has also provided the declarations of three companionship employees—Judith Simpson, Robin Urban, and Toni Watts—stating that they were not properly paid overtime for their work in excess of forty hours in a workweek, and that they were not paid for travel time between clients. [Docs. 143-5, 143-6, & 143-7]. Plaintiff asserts that the proposed class notice is accurate, and requests a ninety-day period to distribute the notice and consent forms. Plaintiff also requests that she be allowed to send notice to potential opt-in plaintiff by both email and mail. Further, Plaintiff asserts that the Court should order Defendants to provide the telephone numbers, email addresses, and home mailing addresses for the class members.

Defendants respond [Doc. 150] that Plaintiff and the putative opt-in plaintiffs are not similarly situated, as employment records contradict the statements in the sworn declarations of Simpson, Urban, and Watts. Defendants explain that time sheets demonstrate that the three declarants never worked more than forty hours in a weekly pay period, and Defendants' records reflect compensation for travel time. Therefore, Defendants assert that Plaintiff is unable to show that Defendants enforced a single FLSA violating policy or common theory of violations, as Plaintiff is the only party who worked overtime for which she was not compensated. Further, Defendants claim that the last date which Plaintiff worked overtime was in October of 2015, which results in her claim being barred by the applicable statute of limitations. Defendants maintain that Plaintiff cannot establish a willful violation of the FLSA due to the uncertainty behind the Department of Labor's application of the Home Care Final Rule. Defendants allege that if their actions were not willful, the failure to pay overtime from January 1, 2015 through November 12, 2015 is barred by the applicable statute of limitations. With respect to the proposed notice, Defendants assert that permitting one round of mailing is sufficient, and email is not an appropriate

form of notice. Lastly, Defendants submit that a forty-five-day period of notice is more appropriate.

Plaintiff's Reply [Doc. 161] argues that there are factual disputes regarding Defendants' claims, as the completeness and accuracy of the timesheets submitted by Defendants are in dispute. Further, Plaintiff asserts that the conditional certification stage is not the proper time for the Court to engage in credibility determinations or decide factual disputes. For example, Plaintiff submits that not all of Judith Simpson's time sheets have been produced, and that travel time was frequently under calculated or not reflected at all. Further, Plaintiff asserts that Defendants' argument regarding the effective date of the Home Care Final Rule is a statute of limitations defense, and as a merit-based defense, is not proper for the Court to consider at this stage. Plaintiff also filed the supplemental declaration of Toni Watts [Doc. 163].

In her Motion for Equitable Tolling [Doc. 145], Plaintiff requests equitable tolling for potential opt-in plaintiffs from the date that Magistrate Judge Steger initially tolled the limitations period (April 10, 2018), until thirty days after the Court rules on the pending motion for conditional certification. Plaintiff alleges that all five equitable tolling factors set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988) are satisfied in the present case. Additionally, Plaintiff asserts that the Court should adopt Magistrate Judge Steger's previous Order [Doc. 101].

Defendants respond [Doc. 159] that Magistrate Judge Steger's initial Order was intended to bridge the time period between Plaintiff's initial motion for conditional certification and the period of discovery regarding joint employment. However, Defendant alleges that this period was impacted by the severing of Plaintiff's claims, and Plaintiff failed to refile a motion for conditional certification by October 26, 2018—in contrast with Magistrate Judge Steger's Order. Further, Defendants allege that Plaintiff has not offered any support for her request to toll the statute of

6

limitations for an entire class of putative plaintiff claims, and Plaintiff cannot show that potential plaintiffs were diligent in pursuing their rights or whether extraordinary circumstances exist. Defendants state that Plaintiff received information for over 250 individuals who worked for Defendants from January 1, 2015 to January 1, 2017, but only three of such individuals have filed sworn declarations. While analyzing the equitable tolling factors, Defendants allege that several of the factors cannot yet be analyzed regarding plaintiffs whose identities are unknown. Additionally, Defendants assert that employees providing services in 2015 and 2016 either knew or should have known of the potential for such violations due to the publicity and relevance of the issue of overtime in the companionship employee field. Defendants claim that they have been prejudiced by spending over six months defending baseless claims related to joint employment, and would now be forced to defend claims that are potentially over four years old. Lastly, Defendants contend that even if Plaintiff's motion is granted, the earliest date that Plaintiff should be allowed to toll the statute of limitations should extend only to the date of filing the motion for conditional certification.

Plaintiff replies [Doc. 162] that although she did not refile a motion for conditional certification, pursuant to Magistrate Judge Steger's Order, the Court has not ended the period of equitable tolling. Plaintiff maintains that she has been diligent in filing her motion, and was previously forced to file a motion to compel meaningful precertification discovery. Therefore, Plaintiff claims that equitable tolling is justified by Defendants' repeated attempts to dissuade its companionship employees from discovering their potential claims under the FLSA.

Defendants have also filed a Motion to Seal [Doc. 151] requesting that the Court seal Exhibits 1-7 [Docs. 152–158] to their Response to Plaintiff's Motion for Conditional Certification. Defendants state that these exhibits are compilations of timesheets for various employees, as well

as monthly summaries of all hours worked by the respective employees. Defendants allege that the compilations of time sheets identify the names of patients for whom the respective employees worked, while the monthly summaries identify each patient by their full name and include the patient's insurance information. Therefore, Defendants claim that redaction is not ideal because the Court must consider which patient was cared for on a given day, due to the issue of unpaid wages for travel time. Defendants request that they be allowed to withdraw the submitted timesheets if the Court declines to order their sealing.

## III.   ANALYSIS

The FLSA directs that an employee or employees may bring an action "against any employer (including a public agency) in any Federal or State court of competent jurisdiction ... for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

A collective action furthers several important policy goals. First, the collective action "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Second, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Id.*

A plaintiff alleging a FLSA violation can bring a representative action for similarly situated persons if the plaintiffs meet two requirements: "1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 545 (6th Cir. 2006) (citations omitted).

8

An FLSA representative action is called a collective action and is different from a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, in that it utilizes an opt-in mechanism rather than the opt-out mechanism employed under Rule 23. *See id.* Further, the FLSA "similarly situated" standard is less stringent than the predominance inquiry typically applicable to class certification disputes under Rule 23(b). *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

In an FLSA action, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Hoffmann–La Roche,* 493 U.S. at 169. Typically, courts have utilized a two-phase process in determining whether the proposed plaintiffs are similarly situated. The first phase takes place at the beginning of discovery, and the second phase occurs after opt-in forms have been disbursed and returned and discovery has been completed. *See Comer,* 454 F.3d at 547.

The instant case is at the first stage of certifying a representative class. "The purpose of the first stage, or conditional certification, is to provide notice to potential plaintiffs and to present them with an opportunity to opt in." *Lindberg v. UHS of Lakeside, LLC,* 761 F. Supp. 2d 752, 757–58 (W.D. Tenn. 2011). During the first stage, the standard for certification is "fairly lenient" and requires only "a modest factual showing" that the plaintiff is similarly situated to the other employees they seek to notify. *See Comer,* 454 F.3d at 547. While "lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs," *O'Brien,* 575 F.3d at 584, requests for conditional certification "typically result[ ] in 'conditional certification' of a representative class." *Hipp v. Liberty Nat'l Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.,* 54 F.3d 1297, 1204 (5th Cir. 1995)).

9

While the required level of proof is minimal and lenient at the first stage, courts should exercise caution in granting conditional certification, because the Court of Appeals for the Sixth Circuit has held "that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable." *See Albright v. Gen. Die Casters, Inc.,* No. 5:10-cv-480, 2010 WL 6121689, at *1 (N.D. Ohio 2010) (quoting *Comer,* 454 F.3d at 549). The court and the parties should be mindful, however, that certification at this first stage is "by no means final." *Id.* at 546 (citation omitted).

With the above standard in mind, the Court turns to the present case. The Court will first analyze whether this lawsuit should be conditionally certified as a collective action. If so, the Court will then turn to the proposed notice. Lastly, the Court will address Plaintiff's motion for equitable tolling, and Defendants' motion to seal.

### A. Conditional Certification

Plaintiff requests that the Court conditionally certify all companionship employees employed by Defendants from January 1, 2015 through December 31, 2017. *See* [Doc. 143 at 1]. Plaintiff claims that she is similarly situated to other companionship employees who worked over forty hours in a workweek without receiving overtime pay, as well as other companionship employees who were not paid for travel time between clients during a workday. In addition to the allegations set forth in the Complaint, Plaintiff has submitted her sworn declaration [Doc. 65-2], as well as the declarations of Judith Simpson, Robin Urban, and Toni Watts [Docs. 143-5, 143-6, & 143-7]. Plaintiff subsequently filed the Supplemental Declaration of Toni Watts [Doc. 163-1].

The Court finds that Plaintiff has met her burden for conditional certification. In the four submitted declarations, Plaintiff, Simpson, Urban, and Watts each state that they were formerly employed by Defendants and that they provided companionship services to private clients in the

client's homes. *See* [Doc. 65-2 at ¶¶ 2–4; Doc. 143-5 at ¶¶ 2–3; Doc. 143-6 at ¶¶ 2–3; Doc. 143-7 at ¶¶ 2–3]. Further, all four declarations claim that they regularly worked in excess of forty hours per week, and that Defendants did not pay the applicable time-and-one-half overtime rate. *See* [Doc. 65-2 at ¶¶ 4, 8; Doc. 143-5 at ¶ 7; Doc. 143-6 at ¶ 6; Doc. 143-7 at ¶¶ 5, 7]. Plaintiff, Simpson, Urban, and Watts also allege that they were told by management that the company was not required to pay the overtime rate. *See* [Doc. 65-2 at ¶ 9; Doc. 143-5 at ¶ 6; Doc. 143-6 at ¶ 5; Doc. 143-6 at ¶ 8]. All four declarations also state that they regularly worked for more than one client during each day, and were instructed that they could not count their travel time between assignments. *See* [Doc. 65-2 at ¶ 7; Doc. 143-5 at ¶ 4; Doc. 143-6 at ¶¶ 5, 7; Doc. 143-6 at ¶ 6].

Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Here, Plaintiff has claimed that she was similarly situated to other companionship employees who were not paid an overtime rate for all hours worked over forty hours in a workweek, as well as those who were not paid for travel time between clients during a workday. *Id.* (noting the plaintiffs "articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time sheets"). Plaintiff alleges that her claims that she was similarly situated to the other companionship workers employed by Defendants are supported by her declaration, as well as the declarations of Simpson, Urban, and Watts. *See, e.g.*, *Keenum v. Lott Enterprises, Inc.*, No. 2:14-CV-0254, 2014 WL 11369832, at *3 (W.D. Tenn. Nov. 25, 2014) ("Plaintiff has included four declarations asserting that Defendant has failed to pay overtime to employees with similar job functions and pay schemes as Plaintiff. Plaintiff has thereby made a

sufficient, modest factual showing of FLSA claims "unified by common theories of defendant['s] statutory violations.") (internal citations and footnote omitted).

Defendants contend that employment records directly contradict the statements in the submitted declarations of Simpson, Urban, and Watts, thus establishing that Plaintiff was not similarly situated to the putative opt-in plaintiffs. For example, Defendants claim that Watts' signed time sheets, which were attached to the submitted declaration of Defendant Grubb, establish that she never worked more than forty hours in a week. Further, Defendants submit that Watts, Urban, and Simpson did not work overtime during their employment. Additionally, Defendants assert that Plaintiff worked overtime on three occasions during her employment, but that the applicable statute of limitations will bar all potential claims. Therefore, Defendants allege that Plaintiff "is similar to Watts, Simpson[,] and Urban *only* in the fact that they were all companionship care employees." [Doc. 150 at 8].

Defendants assert that the submitted employment records reflect that Simpson was compensated for the time she spent traveling between clients. Additionally, Defendants state that Urban drove between client assignments on May 26, 2017 and July, 14, 2017, and although she did not receive compensation for her travel time in her paycheck for the week of May 22, 2017, she was overcompensated for her travel time on her paycheck for the week of July 20, 2017. Lastly, Defendants contend that the applicable statute of limitations would bar Plaintiff and Watts' potential claims for not being paid travel time in 2015.

The Court notes that "because of the potential for abuse, the [C]ourt must be careful to guard against 'the stirring up of litigation through unwarranted solicitation.'" *Lacy v. Reddy Elec. Co.*, No. 3:11-CV-52, 2011 WL 6149842, at *2 (S.D. Ohio Dec. 9, 2011) (citing *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266–67 (D. Minn. 1991) (internal quotation marks

omitted)). However, the Court finds that the information before the Court in Plaintiff's motion for conditional certification is sufficient, at this stage, to conditionally certify the collective action. "During this preliminary stage, a district court does not generally consider the merits of claims, resolve factual disputes, or evaluate credibility." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015).

The Court finds that the parties have provided conflicting declarations regarding the number of hours worked and compensation of travel time. *See, e.g.*, *Rembert v. A Plus Home Health Care Agency LLC*, No. 2:17-CV-287, 2018 WL 2015844, at *2–3 (S.D. Ohio May 1, 2018) ("Defendants have submitted their own declarations which purportedly contradict Rembert's statements. However, it is not the court's role at the conditional certification stage to resolve factual disputes or evaluate credibility.") (citing *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1042 (S.D. Ohio 2018)). For example, Plaintiff has provided the Supplemental Declaration of Toni Watts [Doc. 163-1], which states, in part, that the produced time sheets do not reflect the total amount of time that she worked as a companionship employee for Defendants, with reference to the care provided to specific patients. Additionally, Plaintiff responded that Defendants' records reveal that travel time was undercalculated or not reflected, and claimed that managers continued to tell companionship workers that they were not entitled to overtime even in 2016. *See, e.g.*, *Richardson v. Vizion One Inc.*, No. 2:17-CV-838, 2018 WL 3912805, at *4 (S.D. Ohio Aug. 16, 2018) ("Plaintiffs' common experience of being told that Vizion One does not pay overtime as a matter of policy plausibly suggests that the policy pre-dated Plaintiffs' employment. The Court is not concerned with the merits of Plaintiffs' claims at this stage, but Vizion One will have the opportunity to demonstrate that it complied with the FLSA during the relevant periods in due course."). The Court ultimately finds that under the lenient standard, Plaintiff has put forth a

"modest factual showing" that she was similarly situated to other companionship workers employed by Defendants. *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006).

With respect to the various arguments submitted regarding the effective date of the Home Care Final Rule, the Court notes that "[n]o circuit court has ruled on the Final Rule's effective date, and the district courts to have done so have reached conflicting conclusions." *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1038 (S.D. Ohio 2018). However, "[i]t appears that the majority of district courts that have ruled on the issue have held that the [Department of Labor's] Home Care Final Rule became effective on January 1, 2015." *Scheck v. Maxim Healthcare Servs., Inc.*, 333 F. Supp. 3d 751, 756 (N.D. Ohio 2018) (citing *Brittmon*, 285 F. Supp. 3d at 1039); *see, e.g.*, *Evans v. Caregivers, Inc.*, No. 3:17-CV-0402, 2017 WL 2212977, at *4 (M.D. Tenn. May 19, 2017) ("This court is likewise persuaded by the reasoning in *Kinkead* and finds that the effective date of the new rule is January 1, 2015."). Regardless, Defendants' arguments concerning the applicable statute of limitations and whether their conduct constitutes a willful violation is not the proper consideration for certification at this stage of litigation. *See Rogers v. Webstaurant, Inc.*, No. 4:18-CV-00074-JHM, 2018 WL 4620977, at *4 (W.D. Ky. Sept. 26, 2018) ("Whether Defendant['s] alleged FLSA violations are 'willful' is a question better suited for a later stage of the litigation.") (quoting *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-CV-807, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (apply a three-year statute of limitations at the notice stage, although the class was subsequently decertified due to the failure to prosecute)); *see, e.g.*, *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 878 (S.D. Ohio 2017).

As a final matter, the Court notes that many of the Defendants' arguments may have merit. Specifically, Plaintiff will be required to prove that she, as well as the other opt-in plaintiffs were employed as companionship employees, and worked more than 40 hours without receiving

overtime pay or were not paid travel time. However, such arguments are more properly considered at the subsequent stages of litigation. "During the second step (or phase), courts have discretion to make a thorough finding regarding the 'similarly situated' requirement, based upon a more fully developed record," including considering the factual and employment setting of the individual plaintiffs and individualized defenses. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (citing *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 547 (6th Cir. 2006); *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006)). The Court finds that Plaintiff has established her lenient burden at this stage, but "[o]nce discovery is complete, a stricter standard applies, and the [p]laintiff must introduce 'substantial evidence' that the opt-in [p]laintiff[s] are similarly situated." *Heldman v. King Pharm., Inc.*, No. 3-10-1001, 2011 WL 465764, at *3 (M.D. Tenn. Feb. 2, 2011) (citing *Frye v. Baptist Memorial Hospital, Inc.,* 2010 WL 3862591, at * 2 (W.D. Tenn. Sept. 27, 2010)). Accordingly, the Court will recommend that the action be conditionally certified as set forth below.

### B. Proposed Notice

Plaintiff requests authorization to send notice to join the collective action to all companionship employees employed by Defendants from January 1, 2015 through December 31, 2017. Additionally, Plaintiff requests a ninety (90) day period to distribute the notice and consent forms, as well as an order directing Defendants to provide telephone numbers, email addresses, and home mailing addresses of potential opt-in plaintiffs. Defendants argue that email is not an appropriate form of notice due to the logistical difficulty, privacy concerns, improper solicitations, and the potential for abuse. Further, Defendants claim that a forty-five (45) day period of notice is more appropriate, as Plaintiff has had the contact information of Defendants' employees since 2016.

15

As an initial matter, the parties appear to agree that notification by U.S. mail is appropriate. Next, during the motion hearing, Plaintiff stated that she did not request reminder notices to be sent out. Therefore, the issues before the Court are the use of email as a method of service and the length of the period to distribute the notice and consent forms.

With respect to FLSA actions, there is "no 'one-size-fits all' approach to notifying putative class members in lawsuits." *Fenley v. Wood Group Mustang, Inc.,* 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016). The goal in sending notice is to provide accurate and timely notice to potential opt-ins while promoting judicial economy. *Id.* The Court, however, "must avoid communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). When addressing Rule 23(b)(3) actions, "[t]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Further, Rule 23(b)(3) also governs the contents of the notice. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

Consistent with this Court's past practice, the Court finds first-class mail and email are appropriate. *See Waitman v. Smoky Mountain Children's Home*, No. 3:14-CV-234-TAV-HBG, 2015 WL 2062127, at *5 (E.D. Tenn. Apr. 30, 2015) ("The undersigned will recommend that the Defendants be ordered to produce the names, the last-known addresses, phone numbers, e-mail addresses, and the dates of employment of persons who worked for the Defendant from June 2, 2011 to the present."); *Bacon v. Subway Sandwiches & Salads LLC*, No. 3:14-CV-192-PLR-HBG, 2015 WL 729632, at *12 (E.D. Tenn. Feb. 19, 2015) ("The undersigned will recommend that the Defendants be ordered to produce the names, the last-known addresses, phone numbers, and e-mail addresses."). The Court agrees that email notification "appears to be in line with the current

16

nationwide trend" and "advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit." *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-CV-807, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (quoting *Atkinson* v. *Teletech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015)). In addition, email has been described as "an inexpensive, non-invasive, effective way to ensure that notice is received in a timely manner." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017). Accordingly, the Court finds that email and first-class mail notifications to the potential opt-in plaintiffs and class members are appropriate.

Next, Plaintiff request an opt-in period of 90 days, given the difficulties in contacting potential opt-in plaintiffs. Plaintiff states that many of the potential plaintiffs are no longer employees of Defendants, and thus, much of the contact information is no longer valid. However, Defendants assert that a forty-five-day notice period is more appropriate given the protracted history in this case, combined with the fact that Plaintiff has had contact information of Defendants' employees from 2016 and 2017 since November of 2018.

"There is no hard and fast rule controlling the length of FLSA notice periods." *Ganci v. MBF Inspection Servs., Inc.,* No. 2:15-CV-2959, 2016 WL 5104891, at *2 (S.D. Ohio Sept. 20, 2016). Some courts have used sixty (60) days as the standard. *Williams v. King Bee Delivery, LLC*, No. 5:15-CV-306-JMH, 2017 WL 987452, at *7 (E.D. Ky. Mar. 14, 2017); *Green v. Platinum Rest Mid-America, LLC*, No. 3:14-CV-439, 2015 WL 6454856, at *4 (Oct. 26, 2015). Other courts have utilized ninety (90) days. *Fenley v. Wood Group Mustang, Inc.,* 170 F. Supp. 3d 1063, 1075–76 (S.D. Ohio 2016); *Atkinson,* 2015 WL 853234, at *1.

The Court has considered the parties' arguments and finds 90 days to be sufficient under

these circumstances. Specifically, the Court finds that Plaintiff has raised legitimate concerns regarding the difficulty of obtaining accurate contact information for potential putative plaintiffs. Accordingly, the Court finds that given this valid concern, the opt-in period shall be ninety (90) days. *See Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1045 (S.D. Ohio Jan. 23, 2018) ("Courts in this district have frequently used their discretion to grant ninety-day opt-in periods.").

### C.      Equitable Tolling

Plaintiff seeks equitable tolling for potential opt-in plaintiffs from April 10, 2018, the date that Magistrate Judge Steger initially tolled the limitations period, until thirty days from the date the Court rules on the pending motion for conditional certification. Alternatively, Plaintiff asserts that the Court should adopt Magistrate Judge Steger's previous tolling order. Defendants maintain that Magistrate Judge Steger's order was not intended to apply after the severing of Plaintiff's claims, and that Plaintiff has not demonstrated that the statute of limitations should be tolled for an entire class of putative plaintiffs. Further, Defendants assert that even if equitable tolling is granted, the earliest date that Plaintiff should be allowed to toll the statute of limitations should extend only until the date of the filing of her motion for conditional certification—March 4, 2019.

The statute of limitations for a FLSA claim is two years for a non-willful violation and three years for a violation that is willful. 29 U.S.C. § 255(a). The filing of a complaint does not toll the statute of limitations for all potential plaintiffs, but instead, the statute of limitations continues to run on each plaintiff's claim until he/she files a consent form opting in the action. 29 U.S.C. § 256(b). "In the case of a collective action, if an individual claimant does not immediately file written consent to become a party plaintiff, or if the individual claimant's name does not appear on the initial complaint, plaintiff's action is considered to be 'commenced' when he files written

consent." *Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1347 (W.D. Tenn. 2016) (citing 29 U.S.C. § 256(b)).

Equitable tolling allows "courts to extend the statute of limitations on a ***case-by-case basis*** to prevent inequity." *Fenley v. Wood Group Mustang, Inc.*, 170 F. Supp. 3d 1063, 1076 (S.D. Ohio. 2016) (quoting *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007)) (other citations omitted) (emphasis in *Fenley*). The decision to apply equitable tolling "lies solely within the discretion of the trial court." *Id.* (quoting *Baden-Winterwood*, 484 F. Supp. 2d at 826) (other citations omitted). Lastly, it is the plaintiff's burden to demonstrate why they are entitled to equitable tolling. *Id.*

In general, a litigant must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628 (W.D. Tenn. 2017) (quoting *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755–56 (2016)) (other citations omitted). The Sixth Circuit has articulated five non-exhaustive factors to consider with respect to equitable tolling: (1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement. *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). This is not a comprehensive list, nor are all these factors necessarily relevant in every case. *Allen v. Yukins*, 366 F.3d 393, 401 (6th Cir. 2004).

With respect to the applicable equitable tolling factors, Plaintiff first claims that potential opt-in plaintiffs likely have no actual notice of the filing requirements, as "[n]o potential opt-in plaintiffs have received Court-approved notice of the filing requirements in this FLSA lawsuit."

[Doc. 146 at 8]. Further, Plaintiff asserts that constructive knowledge should generally not be imputed to potential opt-in plaintiffs. [*Id.*] (citing *Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1349 (W.D. Tenn. 2016) ("To impute knowledge to the opt-in Plaintiffs, the Court would have to assume that they knew or should have known what constituted a wage violation, that their employer was committing a wage violation against them, and the filing requirements under 9 U.S.C. § 255 in order to assert their rights.")). Additionally, Plaintiff contends that these opt-in plaintiffs were reasonable in remaining ignorant of the notice requirement, as Defendants allegedly "took deliberate steps to conceal potential opt-in plaintiffs' knowledge of their overtime wage claims." [Doc. 146 at 10]. However, Defendants allege that these factors cannot yet be analyzed with regard to plaintiffs whose identities are not known, and that such employees should have known of the potential for a FLSA violation due to the publicity of this issue regarding their specific careers. [Doc. 159 at 6].

Plaintiff contends that she has been diligent in pursuing the rights of potential opt-in plaintiffs, specifically to toll the statute of limitations to these plaintiffs. [Doc. 146 at 9]. Lastly, Plaintiff maintains that equitably tolling the statute of limitations would not prejudice Defendants, as the Defendants have been on notice since at least February 1, 2018, that they may be liable for FLSA claims stemming from the date that the new Department of Labor regulation took effect. [*Id.*]. Defendants assert that they have been prejudiced from defending the original claims prior to Plaintiff's case being severed, and would now be required to defend against claims that are potentially over four years old. [Doc. 159 at 6–7].

Here, as the Court has previously detailed, Magistrate Judge Steger previously tolled Plaintiff's claims, ordering that "[t]he statute of limitations for putative Plaintiffs' FLSA claims shall be tolled: (a) from April 10, 2018, to a date thirty days (30) after this Court rules upon

Plaintiffs' refiled motion for conditional certification of a collective action; or, alternatively, until (b) the Court enters an Order notifying counsel for the parties that such tolling is ending." [Doc. 101]. Although Plaintiff's claims against Defendants were subsequently severed and transferred, the Court finds that this Order is still applicable to Plaintiff's claims, as the Court has yet to rule on Plaintiff's motion for conditional certification or notify her that the tolling period has ended. While Magistrate Judge Steger may not have foreseen the resulting procedural posture of this case at the time he tolled Plaintiff's claims, Defendants fail to cite any supporting case law establishing that the original Order is not applicable to potential opt-in plaintiffs. Even though Plaintiff did not file her motion for conditional certification by the date set forth in Magistrate Judge Steger's order, Plaintiff's claims were subsequently severed and transferred to this District. The Court finds that Plaintiff has attempted to diligently pursue her claims, as well as those of potential opt-in plaintiffs, and has not been notified that the original tolling order was not applicable to the claims of potential opt-in plaintiffs.

Further, the Court notes that the issue of equitable tolling is appropriate to address at this point, as Defendants have asserted a statue of limitations defense in the Answer to Plaintiff's complaint [Doc. 133 at 5], as well as against the claims of several opt-in plaintiffs. *Compare Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1348–49 (W.D. Tenn. 2016) (holding defendant's argument that equitable tolling is premature "is similarly unpersuasive," as "from the beginning, NPC has clearly anticipated the statute of limitations being an issue—as it was one of the affirmative defenses" raised but "due to the delays, the Court has not yet had the opportunity to address the matter of providing Court-approved notice to potential opt-in Plaintiffs—as in regular in FLSA actions"), *with Wilson v. Agrileum LLC*, No. 2:15-CV-02702-JPM-DKV, 2016 WL 11541229, at *4 (W.D. Tenn. Aug. 26, 2016) (declining to address Plaintiff's request to equitably

toll the claims of potential plaintiffs, in part, because "[t]he statute of limitations is an affirmative defense, which Defendants have not asserted with regard to the claims of any opt-in plaintiff").

"In collective wage and employment cases, courts regularly grant equitable tolling so that plaintiffs may assert their claims despite the kinds of delays inherent in such litigation. The logic of this is clear upon considering the fact that the defendant initially is the party in sole possession of the names and last known physical addresses of all potential opt-in Plaintiffs." *Penley*, 206 F. Supp. 3d at 1348 (tolling the plaintiff's claims "as of the date that the first motion for conditional certification could have been fully briefed under the scheduling order in place at the time"). Ultimately, "the goal of equitable tolling, to the extent possible, is to put the Plaintiffs in the same position in which they would have been had the delays not occurred." *Id.* at 1351. Therefore, the Court recommends that the District Judge find that the claims of putative opt-in plaintiffs are tolled as of April 10, 2018 to a date thirty days after the Court rules on Plaintiff's motion for conditional certification.

### D. Defendants' Motion to Seal

In their Motion to Seal [Doc. 151], Defendants request that the Court seal Exhibits 1-7 [Docs. 152-158] to their Response to Plaintiff's Motion for Conditional Certification [Doc. 150]. Defendants allege that the submitted compilations of time sheets identify the names of patients for whom the respective employees worked, while the provided monthly summaries identify each patient by their full name and include the patient's insurance information. Therefore, Defendants claim that redaction is not ideal because the Court must consider which patient was cared for on a given day, due to the issue of unpaid wages for travel time. Plaintiff has not responded in opposition to Defendants' request.

Local Rule 26.2 provides as follows: "Except as otherwise provided by statute, rule, or

order, all pleadings and other papers of any nature filed with the Court . . . shall become a part of the public record of this Court." E.D. Tenn. L.R. 26.2(a). In order to seal any part of the record, a party must show good cause. E.D. Tenn. L.R. 26.2(b). In this District, discrete redacting of documents or selective sealing is generally preferred over the wholesale sealing of documents. *See* E.D. Tenn. L.R. 26.2; E.D. Tenn. ECF R & P at § 12; *see also PPG Inc. v. Payne*, No. 3:10-CV-73, 2010 WL 2158807 (E.D. Tenn. May 25, 2010) (Jordan, J.) and *In re Southeastern Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 912 (E.D. Tenn. 2009) (Greer, J.).

The Court finds good cause to seal the documents at issue [Docs. 152–59], and agrees with Defendants that redaction is not appropriate due to the need for the Court to identify which patient a companionship worker cared for on a given day. Accordingly, the Court recommends that Defendants' Motion to Seal [Doc. 151] be granted.

## IV.    CONCLUSION

Accordingly, for the reasons cited herein, the Court **RECOMMENDS**[2] that the Plaintiff's Motion for Conditional Certification [**Doc. 143**], Plaintiff's Motion for Equitable Tolling [**Doc. 145**], and Defendants' Motion for Leave to File Document Under Seal [**Doc. 151**] be **GRANTED**. The Court **RECOMMENDS** as follows:

> (1) This case be conditionally certified for current and former companionship employees employed by Defendants from January 1, 2015 through December 31, 2017;

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

(2) Defendants be **ORDERED** to produce the names, addresses, and dates of employment for all persons potentially covered by the collective action within twenty (20) days of entry of the Order ruling on the instant Report and Recommendation;

(3) If the parties have not reached an agreement regarding the notice and opt-in forms by the time the District Judge enters an Order ruling on this Report and Recommendation, Plaintiff would be **ORDERED** to file their proposed notice and opt-in form within five (5) days of the Order ruling upon this Report and Recommendation and that the Defendants be permitted to respond or file a competing notice and opt-in form within five (5) days of the Plaintiff's filing;

(4) The claims of putative opt-in plaintiffs are tolled as of April 10, 2018 to a date thirty days after the Court rules on Plaintiff's motion for conditional certification; and

(5) That the Clerk of Court be ordered to seal the submitted exhibits [Docs. 152-158] so that they may be viewed only by counsel for the parties and the Court.

Respectfully submitted,

United States Magistrate Judge